**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Don Fanta and Marcia Fanta, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER RE MOTION IN LIMINE TO** |
| | ) | **EXCLUDE DAMAGES FOR** |
| vs. | ) | **FAMILY LABOR** |
| | ) | |
| FIMCO Industries and | ) | |
| Bomgaars Supply, Inc., | ) | Case No. 1:05–cv-015 |
| | ) | |
| Defendants. | ) | |

Before the court is defendant FIMCO Industries' ("FIMCO") Motion In Limine to exclude damages for family labor. Defendant Bomgaars Supply, Inc. ("Bomgaars"), moved to join FIMCO's motion, and the plaintiffs, Don Fanta and Marcia Fanta, have responded. The motion is now ripe for consideration.

**I.   BACKGROUND**

The plaintiffs' amended complaint dated July 13, 2005, alleged that on or about July 20, 2002, Don Fanta was unhitching a pull type crop strayer manufactured by FIMCO from a tractor when the rear rest stand allegedly failed causing the crop sprayer to overbalance and pitch upward at the hitch site. The sprayer allegedly pinned Don Fanta's thumb between the crop sprayer hitch and the tractor. This resulted in the amputation of Don Fanta's thumb.

Plaintiffs claim they purchased the crop sprayer from Bomgaars and received an additional boom from a Bomgaars salesperson. Plaintiffs claim the boom was a prototype and that FIMCO told Bomgaars that the boom should not be used with the plaintiffs' sprayer but that the plaintiffs were not told this by Bomgaars.

Plaintiffs allege that FIMCO negligently failed to adhere to proper design standards, failed to provide a stable and appropriate rear rest stand, and failed to warn of a potential overbalance danger.  They further allege that Bomgaars was negligent by failing to provide specific limitations or warnings for the sprayer and boom, provide an appropriate sprayer boom, and to identify a proper boom for the sprayer.

Among other damage allegations, plaintiffs claim Don Fanta suffered a severe and disabling injury resulting from the amputation of his thumb and that this caused an impairment to his employment and recreational opportunities and to his future earning capacity. Plaintiffs, during discovery, submitted economic loss calculations resulting from the injury that included wages allegedly owed to their three sons.  The claim for wages included an hourly salary of $25 and mileage of $0.37 per mile.

On April 25, 2006, FIMCO filed a Motion In Limine to exclude damages for family labor allegedly performed by the plaintiff's sons to help Don Fanta on the farm after the accident.  FIMCO claims the plaintiffs have no standing to raise a claim for damages for alleged work performed by the plaintiffs's sons because the money was never actually paid.  Bomgaars joins in FIMCO's motion  arguing there was never any legal obligation by Don Fanta to compensate his sons for their work, nor did the sons expect to be compensated.

The plaintiffs responded that they have an obligation to compensate their sons for the work the sons performed as a result of the injury.  They claim they have standing to ask for the compensation because they are not asserting their sons' rights, instead they are seeking redress of their own.

## II.     ANALYSIS AND DISCUSSION

FIMCO's assertion that plaintiffs do not have standing to request damages for their sons' labor is misplaced.  The plaintiffs are not claiming damages on behalf of their sons, they are claiming damages for themselves resulting from the alleged wrongful conduct of the defendants.  And, part of the damages they are seeking is compensation of the value of work that Mr. Fanta alleges he was not able to perform.  Therefore, at this point, the question more aptly appears to be whether the plaintiffs can claim economic loss when services were performed gratuitously by third persons thereby relieving the injured party from expending additional expense to continue his or her operation and consequently reducing the alleged tortfeasors liability.

The general torts rule applicable to this situation is that "benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable." Restatement (Second) of Torts § 920A (2006).  "Payments or benefits conferred by other sources are known as collateral-source benefits." Id. at cmt. n. b.  The injured party may recover the reasonable value of gratuitous services rendered. Id. at cmt. n. c(3). see also 25 C.J.S. Damages § 287 (2006) (stating a wrongdoer is not entitled to have the damages for which he or she is liable reduced by reason of benefits received by the injured party from a collateral source); 22 Am. Jur. 2d Damages § 763 (2005) (opining the general rule is that benefits received by a plaintiff from a collateral source do not diminish the damages otherwise recoverable from the wrongdoer).

3

The North Dakota Supreme Court applied this principle in Ostmo v. Tennyson, 296 N.W. 541 (N.D. 1941), superseded in part by statute, N.D.C.C. § 32-03.2-06[1], as recognized in Dewitz v. Emery, 508 N.W.2d 334 (N.D. 1993). In Ostmo, the court rejected the defendant's assertion that he should have been allowed to show that after an automobile accident the truck was taken to the dealer and repairs made at no expense to the plaintiff, and therefore, if the dealer repaired the truck without expense to the plaintiff, the plaintiff was not damaged and he has had no expense whatsoever. 296 N.W. 541, 544. The court reasoned instead:

> If the defendant caused the collision so that by his negligence the plaintiff's truck was damaged, he is responsible for the damages, and he can not take advantage of the fact that some one may have repaired the truck without charge, or that some friends may have contributed to the cost, or that some dealer may have been generous enough to give plaintiff a brand new truck in place of the old one. If the plaintiff got more for the wrecked truck than it was reasonably worth so that a purchaser had paid more for the wreckage than its actual value, the defendant can not claim this as an offset. One of the problems for the jury to determine was what, if any, was the damage inflicted by the defendant upon the truck . . . .

Id. at 545.

The North Dakota Supreme Court later reaffirmed the holding in Ostmo and the "traditional collateral-source rule" and considered it the majority view among jurisdictions. Keller v. Gama, 378 N.W.2d 867, 868 (N.D. 1985). The Court in Keller stated that Ostmo implied that "the wrongdoer should not benefit at the expense of an innocent party, even where the injured party subsequently received reimbursement from someone other than the wrongdoer." Id.; see also, South v. Nat'l R.R.

---

[1] N.D.C.C. § 32-03.2-06 states:
After an award of economic damages, the party responsible for the payment thereof is entitled to and may apply to the court for a reduction of the economic damages to the extent that the economic losses presented to the trier of fact are covered by payment from a collateral source. A "collateral source" payment is any sum from any other source paid or to be paid to cover an economic loss which need not be repaid by the party recovering economic damages, but does not include life insurance, other death or retirement benefits, or any insurance or benefit purchased by the party recovering economic damages.

4

Passenger Corp., 290 N.W.2d 819, 841-42 (N.D. 1980) (holding an "injured person can recover, as an element of damages, the reasonable value of medical care and treatment rendered, even though such care or treatment is provided gratuitously, without charge").

In <u>Dewitz v. Emery</u>, the North Dakota Supreme Court held that the collateral source reduction provisions of N.D.C.C. § 32-03.2-06 did not apply to charitable gifts. In <u>Dewitz</u>, the plaintiff received a $1,500 gift from the Aid Association for Lutherans to help him with his recovery from an accident. 508 N.W.2d 334, 340. The Court held that under "the common law rule, a negligent defendant was held responsible for the plaintiff's damages and could not take advantage of the fact the injured party received assistance or compensation from independent sources. <u>Id.</u> (citing <u>Ostmo v. Tennyson</u>, 70 N.D. 558). The Court concluded that the legislature did not change the common law rule as to charitable gifts when it passed N.D.C.C. § 32-03.2-06. <u>Id.</u> at 341.

In light of North Dakota's adoption of the common law rule regarding collateral sources and the fact it does not appear that § 32-03.2-06 applies in this case, the court denies the motion to exclude the evidence on the grounds that the plaintiffs have not paid their sons for the work that was performed. However, in so ruling, the court is not foreclosing any other objections that may be made at trial to the introduction of the evidence.

Also, defendant Bomgaars makes the point that plaintiffs' sons assisted the plaintiffs' farming operation prior to the alleged injuries. If evidence regarding the amount of time spent by the sons is admitted as part of the damage evidence in this case, it may very well be that evidence of the assistance provided by the sons prior to the accident would also be admissible. For example, there may be a fact issue regarding whether the plaintiffs were capable of performing all of the work being claimed prior to the alleged injuries. There may be other possibilities as well. The court

believes that all of these questions are better dealt with at trial when the full factual picture is before the court.

## III.     CONCLUSION

Because the plaintiffs have standing to sue for gratuitous services, the FIMCO's Motion In Limine to exclude damages for family labor (Docket No. 29) is **DENIED**.  Bomgaars' Joinder Motion is **GRANTED**.  (Docket No. 33).

Dated this 25th day of August, 2006.

/s/ Charles S. Miller, Jr.  
Charles S. Miller, Jr.  
United States Magistrate Judge